United States District Court

District Court of Maine

| | | |
|---|---|---|
| GLEN PLOURDE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No: 1:23-cv-00323-JAW |
| BPD OFFICER HIGGINS, BPD | ) | And Demand for a Jury Trial |
| OFFICER LEWIS, BPD OFFICER | ) | |
| DAVIS, BANGOR POLICE | ) | |
| DEPARTMENT, CITY OF BANGOR, | ) | |
| | ) | |
| Defendants | ) | |

U.S. DISTRICT COURT
DIST... ... MAINE
RECEIVED & FILED
2023 AUG 18 P 3: 42
DEPUTY CLERK

## COMPLAINT AND DEMAND FOR A JURY TRIAL

### I. Parties to the Complaint

Plaintiff

1.  Glen Plourde
    455 Chapman Road
    Newburgh, Penobscot County
    Maine 04444
    207.234.2042
    Glen.Plourde@gmail.com

Defendant #1

2.  BPD Officer Brian Higgins (last name obtained from public record)
    (Address Unknown Despite Multiple Background Checks)
    (Phone Number Unknown Despite Multiple Background Checks)
    (Email Unknown Despite Multiple Background Checks)

Defendant #2

3.  BPD Officer Edwin Lewis (last name obtained from public record)
    (Address Unknown Despite Multiple Background Checks)
    (Phone Number Unknown Despite Multiple Background Checks)
    (Email Unknown Despite Multiple Background Checks)

Defendant #3

4.   BPD Officer Shannon Davis (last name obtained from public record)
     (Address Unknown Despite Multiple Background Checks)
     (Phone Number Unknown Despite Multiple Background Checks)
     (Email Unknown Despite Multiple Background Checks)

Defendant #4

5.   Bangor Police Department
     240 Main Street
     Bangor, Maine 04401.  Penobscot County.
     207.947.7384
     Bangor.police@bangormaine.gov

Defendant #5

6.   City of Bangor
     73 Harlow Street
     Bangor, Maine 04401.  Penobscot County.
     207.992.4200
     councilors@bangormaine.gov
     Rick Fournier is Council Chair/Governor

## II.  Jurisdiction and Venue

7.   This Court has subject matter jurisdiction over Plaintiff's Federal
     Constitutional Claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 42
     U.S.C. §§ 1983 and 1988, as this action arises under the Constitution
     and laws of the United States.

8.   This Court has subject matter jurisdiction over Plaintiffs' Maine State
     Constitutional Claims pursuant to 28 U.S.C. § 1367, as those claims are
     substantially related, both legally and factually, to the Federal
     Constitutional Claims upon which original jurisdiction is premised.

9.   This Court has personal jurisdiction over the Defendants as they are all,
     to the best of the Plaintiff's knowledge, residents of Maine.

10.  Venue in this district is proper under 28 U.S.C. § 1391(b) because the
     Defendants are residents of the district, and the events giving rise to the
     claim occurred within the district.

11.  This case is properly filed in Bangor because the Plaintiff was subject to
     unlawful action by the Defendants in Penobscot County, Maine.

### III.  Statement of Facts

12.  On August 21, 2017, at approximately 1:15pm, the Plaintiff (Glen Plourde) was peaceably minding his own business inside his residence at that time, Eagle Crest Apartments, 844 State Street, Apt. #56, Bangor Maine 04401.

13.  Plaintiff's mother visited him unannounced at that time and after a brief argument, left.

14.  Shortly thereafter, at approximately 1:30pm, The Bangor Police Department ("BPD"), represented by Bangor Police Officers Higgins ("Officer Higgins"), Lewis ("Officer Lewis"), and Davis ("Officer Davis") arrived at the Plaintiff's residence at Eagle Crest Apartments.

15.  The Plaintiff could hear typical police "radio chatter" and concluded that the party(s) arriving at his apartment (defendants) were probably law enforcement officers of some kind although they never identified themselves, never identified a reason for being at the Plaintiff's apartment, and did not have a search warrant of any kind.

16.  The Parties (defendants) noted above did not articulate a reason for being at Plaintiff's apartment, nor did they articulate the fact that they were law enforcement officers, nor did they have a search warrant of any kind.

17.  A BDP Officer who later identified himself as BDP Officer Higgins breached (broken and removed) an interior screen of an open window located directly adjacent to Plaintiff's front door, reached into the Plaintiff's apartment, and unlocked the front door, opened the front door, and proceeded to enter the Plaintiff's apartment through that opened front door.  BDP Officers Lewis and Davis followed Officer Higgins into the Plaintiff's apartment.

18.  Plaintiff's mother attempted to follow the Officers into Plaintiff's apartment although she was quickly removed by Officer Higgins and prevented from entering Plaintiff's apartment for the rest of the encounter.

19.  Plaintiff was naked at that time, *as is his right to do* alone and in the privacy of his own dwelling with the interior blinds drawn shut, because his apartment had a heating problem that had previously

been officially reported to Eagle Crest Apartment Manager Maria Mangio (the heat was stuck in the "on" position during the summer despite the thermostat setting, which was and remained broken) and it was extremely hot and uncomfortable in the Plaintiff's apartment.

The Plaintiff has not included his complaints regarding the excessive heat nor the broken thermostat (nor the responses to those complaints) to Eagle Crest Apartment Manager Maria Mangino although those complaints and responses can be produced at The Court's request if deemed to be necessary.

20.  Plaintiff had been attempting to nap on the floor of his apartment, naked, because the heat was unbearable and the floor was the coolest place in the apartment.  When his apartment was breached as described above, Plaintiff remained on the floor and attempted to obscure his genitals from whomever might be coming through the door.

21.  The three BDP Officer defendants entered the Plaintiff's apartment and ordered the Plaintiff to stand up, naked, and put his arms over his head and rotate in circles (like a pirouette) so that they could "check for injury".  They stated that they "thought the Plaintiff was bleeding" although there was no blood whatsoever of any kind in the Plaintiff's apartment or on his person.

22.  The Plaintiff was completely fine, completely healthy, was not bleeding, and had no injury(s).

23.  The Plaintiff noted that Officer Davis was a female about his age and standing naked in her presence and being forced to rotate in circles with his arms over his head embarrassed the Plaintiff greatly.

24.  Likewise, the Officers had left the door to the Plaintiff's apartment wide open, although they were standing between him and the door detaining him but this did not block the view, and the Plaintiff saw many of his neighbors, some being women his age or younger, looking in through the open door at the naked Plaintiff as the BDP's presence had attracted their attention.  The Plaintiff was extremely embarrassed that many of his neighbors, some being young women, were watching and continued to watch him being questioned by the BPD while he was naked.

25.  After finding no injury, the BDP Officers stated that they "were concerned about the Plaintiff's mental health", although they did not state why.

26. The Plaintiff had not given them, the BDP, or the City of Bangor any cause to be concerned about his mental health whatsoever at any time.

27. The Plaintiff repeatedly told the BPD Officers he had done nothing wrong and asked them repeatedly to leave his apartment and leave him in peace.

28. The BDP Officers appeared to be attempting to trespass in the Plaintiff's apartment for as long as possible by continuing to ask him the same questions over and over unnecessarily.

29. The Plaintiff demanded the names and badge numbers of the BPD Officers and they self-identified themselves as Officer Higgins badge #750, Officer Lewis badge #74, and Officer Davis badge #760 (i.e. The named BPD defendants).

   The BDP Officer defendants did not identify their first names, possibly to make discerning their identity more difficult, although the Plaintiff has conducted a public records search and has found that the only BPD Officers named in the public record with the last names self-provided by the Officers are the Officers listed in (¶¶2, 3, 4).

   The Plaintiff therefore reasonably believes he has named the proper defendants in this complaint due to the information they have self-provided as well as the information he has obtained from public records.

   The *Pro Se* Plaintiff is not an attorney, not a private investigator, is indigent, and public records are his only source of information. Should these defendants be later found to have been somehow misidentified (and the Plaintiff reasonably believes they have not been misidentified as the public records have included photos which the Plaintiff has recognized), then the Plaintiff asks The Court to look favorably upon such amendment to his complaint that is Fair, Just, and Proper.

30. After what seemed to be an extraordinarily long time, the BDP Officer defendants finally left the Plaintiff's apartment, and the Plaintiff closed, locked, and further secured his front door and attempted to fix and replace the interior screen to his window, which Officer Higgins had breached (broken and removed).

31.  The Plaintiff therefore asserts that his United States Constitutional Rights (*inter alia,* his Fourth and Fourteenth Amendment Rights) have been violated by the named defendants during this encounter for the facts (i.e. their behavior; *inter alia* unlawfully searching the Plaintiff's apartment, unlawfully seizing and searching the Plaintiff, breaking into the Plaintiff's apartment, trespassing within the Plaintiff's apartment, harassing the plaintiff, etc.) as accurately described above.

32.  The Plaintiff therefore asserts that his Maine State Constitutional Rights (*inter alia,* his Article 1 Section 5 and 6-A Rights) have been violated by the named defendants during this encounter for the facts (i.e. their behavior; *inter alia* unlawfully searching the Plaintiff's apartment, unlawfully seizing and searching the Plaintiff, breaking into the Plaintiff's apartment, trespassing within the Plaintiff's apartment, harassing the plaintiff, etc.) as accurately described above.

33.  The Plaintiff immediately drafted an unsworn declaration describing this encounter and submitted it to Senator Susan Collins' Office through that Senator's public internet website that afternoon.  The same unsworn declaration was also submitted to The Office of Governor Paul LePage shortly thereafter.

   The Plaintiff was, at that time, submitting documentation to those offices on what might be viewed as a regular basis, in an attempt to solicit their help for what the Plaintiff was experiencing at that time, and this document submission was therefore not unusual behavior for the Plaintiff at that period in time.

   The unsworn declaration has not been included in this complaint, for purposes of brevity, but it can and will be produced during the discovery process or sooner should The Honorable Court demand it.  It is also available from the Offices cited above as they have received copy of it as described.

34.  Approximately two weeks after the incident described above, on 09/08/17, the BPD returned to the Plaintiff's apartment and again violated his United States Constitutional Rights, as will be described below.

35.  The Plaintiff had closed, locked, and secured the window next to his apartment door since the 08/21/17 incident in order to ensure that his window and door could not be breached in the same manner as Officer Higgins had done on 08/21/17.  The door was both locked and secured

as well.

36.   After trying both the door and the window and finding them locked and secured, the BPD Officer defendants began banging loudly on the Plaintiff's door and ringing the doorbell repeatedly for an excessive period of time, perhaps five minutes or longer.

37.   This time, they announced themselves as Bangor Police and the Plaintiff clearly recognized the voice of Officer Higgins, which was unmistakable, and the Plaintiff believes he also recognized the voices of Officers Lewis and Davis although it was difficult to tell as they didn't talk much during the 08/21/17 incident and it was clearly Officer Higgins who was in charge as he himself did, almost exclusively, all of the talking during the 08/21/17 incident as well as this new incident on 09/08/17.

38.   The Officers kept yelling rude things loudly like "Open Up" and "Open the door now" although they never stated they had a warrant and never stated why they were there continually banging on the Plaintiff's door and ringing the doorbell over and over again.

39.   There was no justifiable or articulated reason for why the BDP Officers (i.e. the defendants) were there, the Plaintiff did not want to somehow give them one by opening that door, and the Plaintiff therefore refused to open his door.

40.   After approximately five minutes or more of this continued harassment, Eagle Crest Apartment Manager Maria Mangino yelled through the door that if the Plaintiff did not unlock it, she would call maintenance and have them unlock his apartment door for the officers.

41.   The Plaintiff recognized this act as illegal, although apparently condoned by the BDP and its Officer defendants, and Plaintiff therefore did not unlock his door in response to her threat.

42.   Maria Mangino also never called maintenance to unlock the Plaintiff's door either.

43.   After approximately 5 – 10 minutes of the harassment described above, the group then moved to the Plaintiff's bedroom window, which was not completely secured as the top was slightly cracked in order to vent heat as the heating problem previously mentioned had not (and never was) corrected.

44. At that point, officer Higgins opened the bedroom window further and reached through the open top of the window in order to move aside a cardboard box the Plaintiff had placed there in order to obscure the view as the curtain rod had broken and would no longer support a curtain, and this too had not been fixed by Eagle Crest Apartments.

45. Officer Higgins literally opened the Plaintiff's bedroom window from the outside, by reaching through the crack between the window and top sill and forcing it down, and reached into the Plaintiff's bedroom in order to move the cardboard box out of the way that the Plaintiff had placed there for his privacy so Officer Higgins could look (search) through the Plaintiff's window.

46. At that time Plaintiff witnessed Officer Higgins and recognized him from the 08/21/17 encounter.  Plaintiff quickly ducked out of view back into his living room and is not sure if Officer Higgins saw the Plaintiff.

47. Officer Higgins then changed his tactic of "brute force" (i.e. banging on Plaintiff's door loudly and repeatedly, ringing the doorbell repeatedly, breaching the Plaintiff's window and shouting to be let in) to one of "diplomacy", although in the Plaintiff's reasonable estimation, it was thinly veiled harassment.

48. Officer Higgins began speaking in a very condescending tone of voice, like one would speak to a small child or dog, and demanded that the Plaintiff step into view of the now open bedroom window so he could "make sure the Plaintiff was ok".  He said he was "worried about the Plaintiff" and "wanted to have a chat".

49. At this point Plaintiff grew furious with Officer Higgins and demanded to know what Authority, Law, or Statute gave the BPD the right to be harassing the Plaintiff, trespassing on his property, and breaking and entering into his apartment.  Neither Officer Higgins nor the other officers in attendance attempted to cite such a law or answer the question.

50. Plaintiff continually told Officer Higgins, over and over again, that he and his officers were engaging in unwanted harassment as well as trespassing and breaking and entering, and demanded that he and the BPD leave immediately.

51. This apparently had an effect, because after telling Officer Higgins a few times that he and his officers were engaging in harassment,

trespassing, and breaking and entering, Plaintiff heard him have a quick and quiet conversation with the other officers in attendance, which was inaudible to the Plaintiff.

52.  The officers then returned to their vehicles and Plaintiff heard Officer Higgins yell loudly, "Well, he knows his Maine law" and then he yelled "I guess I'll be seeing you – but not in this country!" and slammed his vehicle door shut loudly.

Plaintiff has idea why Officer Higgins yelled the second comment, although he could speculate, although he chooses not to at this time. Suffice to say, the second comment was both unnecessary and extremely unnerving.

53.  The Plaintiff therefore asserts that his United States Constitutional Rights (*inter alia,* his Fourth and Fourteenth Amendment Rights) have been violated by the named defendants during this encounter for the facts, (i.e. their behavior; *inter alia* unlawfully searching the Plaintiff's apartment, unlawfully confining the Plaintiff to his apartment (seizure), breaking into the Plaintiff's apartment, trespassing within the Plaintiff's apartment, harassing the plaintiff, etc.) as accurately described above.

54.  The Plaintiff therefore asserts that his Maine State Constitutional Rights (*inter alia,* his Article 1, Section 5 and 6-A Rights) have been violated by the named defendants during this encounter for the facts (i.e. their behavior; *inter alia* unlawfully searching the Plaintiff's apartment, unlawfully confining the Plaintiff to his apartment (seizure), breaking into the Plaintiff's apartment, trespassing within the Plaintiff's apartment, harassing the plaintiff, etc.) as accurately described above.

55.  After the BDP defendants had left, the Plaintiff again drafted an unsworn declaration as he had done after the 08/21/17 encounter and submitted it to The Office of Senator Susan Collins through the method previously described.  The Office of Governor Paul LePage also received the unsworn declaration.

The unsworn declaration has not been included in this complaint, for purposes of brevity, but it can and will be produced during the discovery process or sooner should The Honorable Court demand it.  It is also available from the Offices cited above as they have received copy of it as described.

56.  The Plaintiff then composed an email stating his dissatisfaction with the BPD and sent it to the BPD using the email address on their website.

The email has not been included in this complaint, for purposes of brevity, but it can and will be produced during the discovery process or sooner should The Honorable Court demand it.  It is also available from the BPD as they have received copy.

57.  At all times relevant to this complaint, to the best of the Plaintiff's knowledge, the individual BDP defendants were employed by the BPD and acting under the color of law.

Plaintiff sues these BPD employee defendants in their individual capacity.

58.  It is reasonable to believe that the BPD officer defendants were dispatched to the Plaintiff's residence by the BPD and not acting "rogue" or just visiting on their own accord, and thus the BPD is named as a defendant.

It is furthermore reasonable to believe that the unlawful actions of the BPD officer defendants have been condoned by the BPD, either implicitly or explicitly, as they were not only dispatched to the Plaintiff's residence on 08/21/18, where they have committed illegalities and constitutional violations against the Plaintiff as pled in complaint; they were again dispatched on 09/08/18 and again committed illegalities and constitutional violations against the Plaintiff as pled in complaint.  Thus again the BPD is named as a defendant as this unlawful and unconstitutional behavior appears to have been condoned and endemic to the BPD.

59.  The City of Bangor is the municipality who owns/operates the Bangor Police department and the unlawful and unconstitutional behavior that appears to have been condoned and to be endemic to the BPD is the responsibility of The City of Bangor.  Thus the City of Bangor is named as a defendant for allowing their Police department to operate in an unlawful and unconstitutional manner as described in complaint.

60.  Plaintiff states that it is impossible to believe that trained police officers such as the BPD defendants did not know that actions and constitutional violations such as breaking and entering, trespassing, harassment, and detaining the Plaintiff against his will in his own

apartment are illegal and thus the Plaintiff states that the defendants are not entitled to the defenses of Qualified Immunity.

61.   Plaintiff was and is highly upset, distraught, and traumatized as a result of the illegal and unconstitutional actions of the defendants as described in complaint.

62.   Plaintiff knows he has already been victim to unlawful behavior by The BPD and its named employee defendants, and they have broken the law and violated his Constitutional Rights and therefore knows it could happen again and at any time, and by any Law Enforcement Agency under any color of Law.

63.   Plaintiff is rightfully distrustful of Law Enforcement and feels that he can no longer interact well with Law Enforcement Agencies as The BPD as its' officers have violated his United States and Maine State Constitutional Rights and have furthermore seemingly admitted to doing so.

64.   The fact that the Plaintiff has been so egregiously and blatantly injured by the defendants, as described above, has put him in a position where he is highly uncomfortable in dealing with them, and this fact will only continue to harm the Plaintiff in the future, as some interactions may be sometimes necessary, and the Plaintiff believes verifiable proof of this Fact has already occurred since this incident.

65.   The Plaintiff is inclined to remind The Court at this time that The First Circuit has held that "We accept as true all well-pled facts set forth in complaint and draw all Reasonable Inferences therein in the pleader's favor." (*Artuso v. Vertex Pharm Inc.*, 637 F.3d 1, 5 (1st Cir. 2011).  The Plaintiff believes that the facts of this complaint are all well-pled and that any inferences he may have drawn, could have drawn, or could be drawn in this complaint are reasonable for reasons that are either obvious or well-stated in this complaint.

66.   The Plaintiff would like to remind The Court that his *Pro Se* complaint is subject to "less stringent standards than formal pleadings drafted by lawyers" (*Haines v. Kerner,* 404 U.S. 519, 520).

67.   Plaintiff wishes to preempt a *Neitzke*-like challenge by reminding The Court that The United States Supreme Court has held that "a court may dismiss a claim as factually frivolous only if the facts alleged are "clearly baseless"". *Neitzke v. Williams,* 490 U.S. 319, 324 (1989).

- 11 -

The facts alleged are clearly not baseless. The Plaintiff, as well as the Office of Senator Susan Collins and The Office of the Governor, have in their possession both the 08/21/17 and 09/08/17 unsworn declarations describing these incidents that were written *the same day as the actions of the BPD*, as they have been described in complaint. Additionally, the Plaintiff has in his possession the email he sent the BPD on or about 09/08/17 describing these incidents and requesting that they stop, and defendant BPD should have this email as well as it was sent to them using the email address they provided on their website.

Furthermore, the Plaintiff's mother directly witnessed the 08/21/17 incident and Eagle Crest Apartment Manager Maria Mangino directly witnessed the 09/08/17 incident, as described in complaint.

Finally, The Formal Discovery Process will produce, through dash camera footage, body camera footage, and the Police Reports that must exist describing these incidents, the fact that these incidents have positively taken place as pled in complaint.

68. Plaintiff wishes to preempt a *Denton*-like challenge to this complaint by recognizing himself that the actions of the defendants are perhaps not what most people think of as "ordinary" in the sense that some of the Facts are perhaps grievous, heinous, or unusual, although not "irrational" or "wholly unbelievable" *as is the threshold in Denton*, and the Plaintiff wishes The Honorable Court to recognize that the Facts have necessarily been made what they are due only to the defendants' conduct, which the Plaintiff had absolutely no control over.

69. The United States Supreme Court has held that "An in forma pauperis complaint may not be dismissed, however, simply because the court finds the plaintiff's allegations unlikely" and continues to elaborate and finally concludes by quoting the great poet George Gordon Lord Byron;

"Some improbable allegations might properly be disposed of on summary judgment, *but to dismiss them as frivolous without any factual development is to disregard the age old insight that many allegations might be "strange, but true*; for truth is always strange. Stranger than fiction."" (*Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

As noted above, if the Court finds the Plaintiff's allegations unlikely, improbable, or strange, it is only due to the highly unusual actions and conduct of the defendants, which the Plaintiff had absolutely no control over and which has been truthfully and accurately

described in this complaint.  The Plaintiff rightfully believes this complaint easily cleared the "clearly baseless" hurdle in *Neitzke* as well as the "irrational or wholly unbelievable" hurdle in *Denton* and therefore welcomes factual development to begin via The Formal Discovery Process.

## IV.  Claims for Relief

### <u>Count 1</u>

42 U.S.C. § 1983 – Deprivation of United States Constitutional Rights, *inter alia*, Fourth Amendment Violation(s), unlawful search of apartment and person and seizure of person.

Glen Plourde v. All Defendants.

70.    Paragraphs (12) – (69) are incorporated by reference as if pled herein.

71.    Plaintiff alleges that all Defendants have deprived him of his Constitutional Rights, *inter alia* his Fourth Amendment Rights, as applied to the States by the Fourteenth Amendment, and as such are liable to the Plaintiff for damages under 42 U.S.C. § 1983 as well as punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

72.    BPD Officer Brian Higgins has engaged in the deprivation of the Plaintiff's United States Constitutional Rights and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

73.    BPD Officer Edwin Lewis has engaged in the deprivation of the Plaintiff's United States Constitutional Rights and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

74.    BPD Officer Shannon Davis has engaged in the deprivation of the Plaintiff's United States Constitutional Rights and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

75. The Bangor Police Department has engaged (condoned) and is responsible for the deprivation of the Plaintiff's United States Constitutional Rights as discussed in (¶58) and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

76. The City of Bangor has engaged (condoned) and is responsible for the deprivation of the Plaintiff's United States Constitutional Rights as discussed in (¶59) and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

## Count 2

5 M.R.S. § 4682 – Intentional Deprivation of United States Constitutional Rights, *inter alia*, Fourth Amendment Violation(s), unlawful search of apartment and person and seizure of person.

Glen Plourde v. All Defendants.

77. The Paragraphs (12) – (69) are incorporated by reference as if pled herein.

78. Plaintiff alleges that all Defendants have deprived him of his Constitutional Rights, *inter alia* his Fourth Amendment Rights, as applied to the States by the Fourteenth Amendment, and as such are liable to the Plaintiff for damages pursuant to 42 U.S.C. § 1983, 5 M.R.S § 4682 and Article 1 Section 19 of The Maine State Constitution as well as punitive damages to deter such intentional deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

79. BPD Officer Brian Higgins has engaged in the deprivation of the Plaintiff's United States Constitutional Rights and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

80. BPD Officer Edwin Lewis has engaged in the deprivation of the Plaintiff's United States Constitutional Rights and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring

to the Plaintiff or to any other citizen again.

81. BPD Officer Shannon Davis has engaged in the deprivation of the Plaintiff's United States Constitutional Rights and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

82. The Bangor Police Department has engaged (condoned) and is responsible for the deprivation of the Plaintiff's United States Constitutional Rights as discussed in (¶58) and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

83. The City of Bangor has engaged (condoned) and is responsible for the deprivation of the Plaintiff's United States Constitutional Rights as discussed in (¶59) and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

## Count 3

5 M.R.S. § 4682 – Intentional Deprivation of Maine State Constitutional Rights, *inter alia*, Article 1 Section 5 Violation(s), unlawful search of apartment and person and seizure of person.

Glen Plourde v. All Defendants.

84. The Paragraphs (12) – (69) are incorporated by reference as if pled herein.

85. Plaintiff alleges that all Defendants have intentionally deprived him of his Maine State Constitutional Rights, *inter alia* his Article 1 Section 5 Maine State Constitutional Rights, and as such are liable to the Plaintiff for damages pursuant to 5 M.R.S § 4682 and Article 1 Sections 5 and 19 of The Maine State Constitution as well as punitive damages to deter such intentional deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

86. BPD Officer Brian Higgins has engaged in the intentional deprivation of the Plaintiff's Maine State Constitutional Rights and is therefore liable to the Plaintiff for damages including punitive damages to deter such

- 15 -

intentional deprivation of Maine State Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

87. BPD Officer Edwin Lewis has engaged in the intentional deprivation of the Plaintiff's Maine State Constitutional Rights and is therefore liable to the Plaintiff for damages including punitive damages to deter such intentional deprivation of Maine State Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

88. BPD Officer Shannon Davis has engaged in the intentional deprivation of the Plaintiff's Maine State Constitutional Rights and is therefore liable to the Plaintiff for damages including punitive damages to deter such intentional deprivation of Maine State Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

89. The Bangor Police Department has engaged (condoned) and is responsible for the deprivation of the Plaintiff's United States Constitutional Rights as discussed in (¶58) and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

90. The City of Bangor has engaged (condoned) and is responsible for the deprivation of the Plaintiff's United States Constitutional Rights as discussed in (¶59) and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

## Count 4

42 U.S.C. § 1983 – Deprivation of United States Constitutional Rights, *inter alia*, Fourteenth Amendment Violation(s), denial of equal access to and protection under the law; i.e. committing the unlawful acts described in complaint and the denial and discrimination against the enjoyment and exercise of the Plaintiff's Civil Rights.

Glen Plourde v. All Defendants.

91. Paragraphs (12) – (69) are incorporated by reference as if pled herein.

92. Plaintiff alleges that all Defendants have deprived him of his Constitutional Rights, *inter alia* his Fourteenth Amendment Rights, as applied to the States by the Fourteenth Amendment, and as such are

liable to the Plaintiff for damages under 42 U.S.C. § 1983 as well as punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

93.   BPD Officer Brian Higgins has engaged in the deprivation of the Plaintiff's United States Constitutional Rights and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

94.   BPD Officer Edwin Lewis has engaged in the deprivation of the Plaintiff's United States Constitutional Rights and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

95.   BPD Officer Shannon Davis has engaged in the deprivation of the Plaintiff's United States Constitutional Rights and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

96.   The Bangor Police Department has engaged (condoned) and is responsible for the deprivation of the Plaintiff's United States Constitutional Rights as discussed in (¶58) and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

97.   The City of Bangor has engaged (condoned) and is responsible for the deprivation of the Plaintiff's United States Constitutional Rights as discussed in (¶59) and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

### Count 5

5 M.R.S. § 4682 – Intentional Deprivation of United States Constitutional Rights, *inter alia*, Fourteenth Amendment Violation(s), denial of equal access to and protection under the law; i.e. committing the unlawful acts described in complaint and the denial and discrimination against the enjoyment and exercise of the Plaintiff's Civil Rights.

Glen Plourde v. All Defendants.

98.  The Paragraphs (12) – (69) are incorporated by reference as if pled herein.

99.  Plaintiff alleges that all Defendants have deprived him of his Constitutional Rights, *inter alia* his Fourteenth Amendment Rights, as applied to the States by the Fourteenth Amendment, and as such are liable to the Plaintiff for damages pursuant to 42 U.S.C. § 1983, 5 M.R.S § 4682 and Article 1 Section 19 of The Maine State Constitution as well as punitive damages to deter such intentional deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

100.  BPD Officer Brian Higgins has engaged in the deprivation of the Plaintiff's United States Constitutional Rights and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

101.  BPD Officer Edwin Lewis has engaged in the deprivation of the Plaintiff's United States Constitutional Rights and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

102.  BPD Officer Shannon Davis has engaged in the deprivation of the Plaintiff's United States Constitutional Rights and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

103.  The Bangor Police Department has engaged (condoned) and is responsible for the deprivation of the Plaintiff's United States Constitutional Rights as discussed in (¶58) and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

104.  The City of Bangor has engaged (condoned) and is responsible for the deprivation of the Plaintiff's United States Constitutional Rights as discussed in (¶59) and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States

Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

### Count 6

5 M.R.S. § 4682 – Intentional Deprivation of Maine State Constitutional Rights, *inter alia*, Article 1 Section 6-A Violation(s), denial of equal access to and protection under the law; i.e. committing the unlawful acts described in complaint and the denial and discrimination against the enjoyment and exercise of the Plaintiff's Civil Rights.

Glen Plourde v. All Defendants.

105. The Paragraphs (12) – (69) are incorporated by reference as if pled herein.

106. Plaintiff alleges that all Defendants have intentionally deprived him of his Maine State Constitutional Rights, *inter alia* his Article 1 Section 6-A Maine State Constitutional Rights, and as such are liable to the Plaintiff for damages pursuant to 5 M.R.S § 4682 and Article 1 Sections 6-A and 19 of The Maine State Constitution as well as punitive damages to deter such intentional deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

107. BPD Officer Brian Higgins has engaged in the intentional deprivation of the Plaintiff's Maine State Constitutional Rights and is therefore liable to the Plaintiff for damages including punitive damages to deter such intentional deprivation of Maine State Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

108. BPD Officer Edwin Lewis has engaged in the intentional deprivation of the Plaintiff's Maine State Constitutional Rights and is therefore liable to the Plaintiff for damages including punitive damages to deter such intentional deprivation of Maine State Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

109. BPD Officer Shannon Davis has engaged in the intentional deprivation of the Plaintiff's Maine State Constitutional Rights and is therefore liable to the Plaintiff for damages including punitive damages to deter such intentional deprivation of Maine State Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

110. The Bangor Police Department has engaged (condoned) and is responsible for the deprivation of the Plaintiff's United States

- 19 -

Constitutional Rights as discussed in (¶58) and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

111.   The City of Bangor has engaged (condoned) and is responsible for the deprivation of the Plaintiff's United States Constitutional Rights as discussed in (¶59) and is therefore liable to the Plaintiff for damages including punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

### V.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _August 18_____, 20_23_

Signature of Plaintiff _____

Printed Name of Plaintiff ___Glen Plourde_____