UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| GLEN PLOURDE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:23-cv-00323-JAW |
| | ) | |
| EDWIN LEWIS, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON MOTION TO DISMISS**

In this action, Plaintiff alleges the City of Bangor, the Bangor Police Department, and Bangor Police Department Officers Edwin Lewis, Shannon Davis, Nick Huggins, Daniel Gastia, and Dustin Dow violated his state and federal constitutional rights. Defendants have moved to dismiss the complaint. (Motion to Dismiss, ECF No. 62.)

Through their motion, Defendants argue (i) Plaintiff failed to state an actionable claim against the City of Bangor and the Bangor Police Department; (ii) Defendants Huggins, Lewis, and Davis did not violate Plaintiff's Fourth Amendment rights on August 21, 2017, as alleged; (iii) qualified immunity precludes Plaintiff's claims; (iv) Plaintiff has not sufficiently pled an Equal Protection claim; (v) Plaintiff's claims against Defendants Gastia and Dow are barred by the statute of limitations; and (vi) as to the individual defendants, there is insufficient process and insufficient service of process. (*Id.* at 5–13.). As part of his response to the motion to dismiss, Plaintiff filed a motion to dismiss, moot, or strike the motion to dismiss. (Motion to Strike, ECF No. 68.)

After consideration of the parties' arguments, I recommend the Court grant in part Defendants' motion to dismiss. I also recommend the Court dismiss Plaintiff's motion to dismiss, moot, or strike Defendants' motion to dismiss.

## FACTUAL BACKGROUND

The following facts are derived from Plaintiff's Third Amended Complaint. A court evaluating a motion to dismiss "accept[s] as true the complaint's well-pleaded factual allegations, and draws all reasonable inferences in favor of the non-moving party." *See McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017).

### A.     August 21, 2017, Incident

According to Plaintiff, during the afternoon of August 21, 2017, while he was alone in his apartment, Defendants Huggins, Lewis, and Davis arrived. (Third Amended Complaint ¶¶ 14, 16, ECF No. 58.) Plaintiff alleges the officers did not identify themselves, explain why they were there, or have a search warrant. (*Id.* ¶¶ 17–19.) Plaintiff asserts that an unknown individual removed an interior screen of an open window adjacent to Plaintiff's front door, reached into Plaintiff's apartment, unlocked his front door from the inside, and opened his front door from the outside. (*Id.* ¶ 21.) The officers then entered Plaintiff's apartment. (*Id.* ¶ 22.)

Plaintiff alleges he was naked at the time due to a heating problem in his apartment. (*Id.* ¶ 24.) Prior to the officers entering his apartment, Plaintiff had been napping on the floor and he remained on the floor after the officers entered his apartment. (*Id.* ¶¶ 25, 27.) As the officers entered the apartment, they left the front door wide open, allowing a crowd to gather to observe what occurred in the apartment. (*Id.* ¶¶ 28–29.)

Plaintiff alleges the officers stated they thought Plaintiff was bleeding and ordered Plaintiff to stand up, put his arms over his head, and rotate in a circle. (*Id.* ¶ 30.) Plaintiff maintains that after the officers determined that Plaintiff was not bleeding or injured, they stated they were concerned about Plaintiff's mental health. (*Id.* ¶ 35.) At this point, the officers began to ask Plaintiff the same question repeatedly. (*Id.* ¶ 38.) After approximately thirty minutes, Plaintiff demanded the names and badge numbers of the officers, which the officers provided. (*Id.* ¶¶ 39–40.) Shortly thereafter, the officers left Plaintiff's apartment. (*Id.* ¶ 42.)

**B.    September 8, 2017, Incident**

Plaintiff alleges that on September 8, 2017, while he was alone in his apartment, officers from the Bangor Police Department arrived and tried to access Plaintiff's apartment by way of a window and door, which were "locked and secure." (*Id.* ¶¶ 55, 57–58.) Plaintiff asserts that an officer then began to knock loudly on Plaintiff's door and ring the doorbell for approximately ten minutes. (*Id.* ¶ 58.) According to Plaintiff, the officers did not provide a reason for being at his apartment. (*Id.* ¶ 67.)

After ten minutes of knocking on the door and ringing the doorbell, an officer[1] went to Plaintiff's bedroom window, which was slightly open, reached in with his hand, forced the window down further, reached through the open window, and moved aside the cardboard box that was obscuring the view. (*Id.* ¶ 69.) Plaintiff asserts that the officer

---

[1] Plaintiff initially believed this officer was Defendant Huggins. (Third Amended Complaint ¶ 59.) Defendants' filings stated that Defendants Gastia and Dow were present at Plaintiff's apartment on September 8, 2017, not Defendant Huggins. (*Id.*) Plaintiff is unsure whether the officer in question is Defendant Gastia or Defendant Dow.

3

asked Plaintiff to step into view of the bedroom window to make sure Plaintiff was okay as he was worried about Plaintiff. (*Id.* ¶ 74.) Plaintiff demanded to know how the officers could come to his apartment under the circumstances, informed the officers that they were engaging in unwanted harassment, and demanded they leave. (*Id.* ¶¶ 76, 79.) Plaintiff alleges that after a quiet conversation, the officers returned to their vehicles. (*Id.* ¶¶ 80, 82.)

## PROCEDURAL BACKGROUND

Plaintiff began this action with the filing of the complaint on August 18, 2023. (Complaint, ECF No. 1.) On October 13, 2023, Defendants filed a motion to dismiss and, on October 23, 2023, moved to amend the motion to dismiss. (Motion to Dismiss, ECF No. 7; Motion to Amend Motion to Dismiss, ECF No. 8.) Plaintiff filed an amended complaint on November 6, 2023. (Amended Complaint, ECF No. 14.)

On November 16, 2023, Defendants filed a motion to dismiss Plaintiff's amended complaint. (Motion to Dismiss Amended Complaint, ECF No. 17.) Plaintiff moved to file a second amended complaint on March 22, 2024, (Motion to Amend Complaint, ECF No. 29), which motion the Court granted on August 22, 2024. (Order Granting Motion to Amend Complaint, ECF No. 45.) On September 10, 2024, Plaintiff moved for leave to file a third amended complaint. (Motion to Amend Complaint, ECF No. 50.) To prevent any confusion regarding the operative pleading and motions, on September 20, 2024, the Court dismissed without prejudice Defendants' motion to dismiss, which motion, the Court noted, could be renewed after the Court ruled on the motion to amend. (Order Dismissing Motions Without Prejudice, ECF No. 53.)

On October 25, 2024, the Court granted the motion to amend, and Plaintiff subsequently filed the amended complaint. (Order Granting Motion to Amend Complaint, ECF No. 55; Third Amended Complaint, ECF No. 58.) Defendants filed an answer to the third amended complaint on November 25, 2024. (Answer, ECF No. 60.) Defendants later filed the pending motion to dismiss the third amended complaint.

## DISCUSSION

**A.  Timing of Motion to Dismiss**

Plaintiff argues that Defendants' motion to dismiss, which seeks dismissal under Rule 12(b)(6), must be denied because Defendants filed the motion after they filed their answer to the complaint. Defendants argue their motion should be considered given Plaintiff's "history of the serial filings," and the September 20, 2024, order dismissing their earlier motions to dismiss without prejudice, which provided that "[i]f the Court grants [Plaintiff's] latest motion to amend, the Defendants may elect to file a new motion to dismiss the third amended complaint, but if the Court denies [Plaintiff's] motion, the Defendant may either refile their dismissed motion or file a new motion to dismiss the second amended complaint." In the alternative, Defendants ask the Court to construe the motion as a motion for judgment on the pleadings in accordance with Rule 12(c).

The filing of a motion to dismiss after an answer does not necessarily preclude a court from considering the motion to dismiss:

> If [a] defendant decides to assert a Rule 12(b) defense by motion, then he must do so before filing the answer. . . . A strict interpretation of the timing provision's language leads to the conclusion that the district judge must deny any Rule 12(b) motion made after a responsive pleading is interposed as

5

> being too late. However, federal courts have allowed untimely motions if the defense has been previously included in the answer.

5C C. Wright and A. Miller, Federal Practice and Procedures § 1361 (3d ed. 2024); Fed. R. Civ. P. 12(b); *Tobin v. Univ. of Me. Sys.*, 59 F. Supp. 2d 87, 89 (D. Me. 1999); *Gerakaris v. Champagne*, 913 F. Supp. 646, 650–51 (D. Mass. 1996); *Puckett v. United States*, 82 F. Supp. 2d 660, 663 (S.D. Tex. 1999) ("If the defendant has previously included in the answer the defense raised in the motion, thereby giving notice, then courts generally allow Rule 12(b)(6) motions filed after the answer."). Courts have also construed motions to dismiss filed after answers as motions for judgment on the pleadings under Rule 12(c). *Delta Truck & Tractor, Inc. v. Navistar Int'l Transp. Corp.*, 833 F. Supp. 587, 588 (W.D. La. 1993).

Here, Defendants' answer "reserved the right to assert, as appropriate at trial" the following defenses: failure to state a claim, statute of limitations, insufficiency of process and/or service of process, immunity, and qualified immunity. (Answer at 1–2.) Through their answer, therefore, Defendants notified Plaintiff of the defenses that Defendants now raise in a motion to dismiss. Because one or more of the defenses could be dispositive, judicial economy weighs in favor of the Court's assessment of the defenses before trial. The Court discerns no prejudice to Plaintiff if the Court considers and rules on the motion to dismiss.[2]

---

[2] Alternatively, the Court will construe the motion as a motion for judgment on the pleadings. A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is "ordinarily accorded much the same treatment" as a motion to dismiss for failure to state a claim. *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54 (1st Cir. 2006).

**B.     Failure to State a Claim**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." In reviewing a motion to dismiss under Rule 12(b)(6), a court "must evaluate whether the complaint adequately pleads facts that 'state a claim to relief that is plausible on its face.'" *Guilfoile v. Shields*, 913 F.3d 178, 186 (1st Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In doing so, a court "assume[s] the truth of all well-pleaded facts and give[s] the plaintiff the benefit of all reasonable inferences therefrom." *Id.* (quoting *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008)). The complaint, however, may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard." *Young*, 717 F.3d at 231. Rule 12(b)(6) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To evaluate the sufficiency of the complaint, therefore, a court must "first, 'isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements,' then 'take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.'" *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020) (alteration omitted) (quoting *Zenon v. Guzman*, 924 F.3d 611, 615-16 (1st Cir. 2019)).

"A self-represented plaintiff is not exempt from this framework, but the court must construe his complaint 'liberally' and hold it 'to less stringent standards than formal pleadings drafted by lawyers.'" *Waterman v. White Interior Sols.*, No. 2:19-cv-00032-

JDL, 2019 U.S. Dist. LEXIS 191506, at *4 (D. Me. Nov. 5, 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

### 1. Claims against the City of Bangor and the Bangor Police Department

Plaintiff alleges claims against the City of Bangor and the Bangor Police Department under 42 U.S.C. § 1983 and 5 M.R.S. § 4682. Because the Bangor Police Department and the City of Bangor are one legal entity, *see Henschel v. Worcester Police Dept.*, 445 F.2d 624, 624 (1st Cir. 1971) (per curiam), and because 5 M.R.S. § 4682 is the Maine analogue to 42 U.S.C. § 1983, only one analysis is necessary to assess the claims. *Cohen ex rel. Cohen v. City of Portland*, 110 F.4th 400, 404 (1st Cir. 2024) (quoting *Berube v. Conley*, 506 F.3d 79, 85 (1st Cir. 2007)) ("The disposition of a [section] 1983 claim also controls a claim under the [analogous Maine statute].").

A municipality cannot be vicariously liable for a constitutional deprivation simply because the deprivation was caused by a municipal employee. *Welch v. Ciampa,* 542 F.3d 927, 941 (1st Cir. 2008) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978)). For a municipality to be liable for a constitutional deprivation, the record must include evidence that a municipal policy, custom, or practice caused the deprivation. *Id.* A plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cty. Comm'rs v. Brown,* 520 U.S. 397, 403 (1997).

#### a. Municipal Policy

Plaintiff argues that while he is unaware of any specific policy, he is certain one exists and will be unearthed through discovery. He also contends that Defendants admitted to a policy through their motion to dismiss.

Plaintiff appears to suggest the City of Bangor has a policy allowing its police officers to conduct warrantless searches absent exigent circumstances in violation of the Fourth Amendment. Plaintiff, however, alleges no facts to support his supposition. Without any supportive facts, Plaintiff's contention is not plausible. *See Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44–45 (1st Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) ("To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability.")

Plaintiff's argument that Defendants admitted to a policy is also unavailing. In support of his contention, Plaintiff cites the following statement in Defendants' motion to dismiss: "The police officers were not alone in the belief that there was an extension of warrantless exceptions in cases like this." (Response to Motion at 10, ECF No. 65; Motion to Dismiss at 10.) Plaintiff contends that this sentence implies that there "was probably a department-wide policy. . . ." (Response to Motion at 10.) The language cannot reasonably be construed as an admission that the City or is police department had a policy to permit unlawful warrantless searches.

    b.  *Municipal Custom*

To hold a municipality liable for a custom or practice, a plaintiff must satisfy a two-prong test:

> First, the custom or practice must be attributable to the municipality. In other words, it must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice. Second, the custom must have been the cause of and the moving force behind the deprivation of constitutional rights.

*Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989) (citations omitted).

Plaintiff argues that by dispatching the officers to his apartment, the Bangor Police Department condoned the actions of the officers. Plaintiff also alleges the unconstitutional conduct he describes is "endemic" to the Bangor Police Department. Plaintiff, however, does not cite any incidents other than those that are the subject of his claim. By dispatching of an officer to a location, a police department does not condone the conduct of the officers who respond to the dispatch. In addition, the alleged incidents are insufficient in number to constitute a custom. *Cf. Bordanaro*, 871 F.2d at 1156 (finding custom existed when behavior was longstanding and widespread); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose [municipal] liability. . . .").

In sum, Plaintiff has not identified a municipal policy or custom that would support a finding of the City of Bangor's municipal liability.

### 2. Equal Protection Claims Against All Defendants

Defendants argue Plaintiff's Equal Protection Claims must be dismissed because Plaintiff failed to allege facts that would support a finding that similarly situated individuals were treated differently.

The Fourteenth Amendment provides under the Equal Protection Clause that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. For a plaintiff to allege a claim under the Equal Protection Clause, the plaintiff must establish that she or he was "treated differently from others similarly situated." *Estate of Bennett v. Wainwright*, 548 F.3d 155, 166 (1st Cir. 2008);

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see Vill. of Willowbrook v. Olech*, 538 U.S. 562, 564 (2000); *Santos v. Fed. Emergency Mgmt. Agency*, 327 F. Supp. 3d 328, 341 (D. Mass. 2018). This requirement "demands more than lip service" and "is meant to be 'a very significant burden.'" *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (quoting *Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 283 (7th Cir. 2003)); *see Barrington Cove Ltd. P'ship v. R.I. Hous. And Mortg. Fin. Corp*, 246 F.3d 1, 8 (1st Cir. 2001) (affirming Rule 12(b)(6) dismissal because plaintiffs failed the "similarly situated" test).

Plaintiff states that his neighbor in the apartment building is a similarly situated individual because the person is about his age and rents an apartment in the same complex. Plaintiff alleges this person was treated differently than Plaintiff because Plaintiff has complained numerous times of "excess noise and harassment" from the individual and no action was ever taken by the apartment complex manager or the police. The connection between this person, the police officers' behavior on the dates in question, and the alleged reason for the officers' behavior[3] is unclear. The mere fact that an individual in Plaintiff's apartment complex was not visited by the police in response to a complaint is insufficient

---

[3] Plaintiff asserts the police officers' behavior is in response to a white paper he submitted to various state and federal government offices detailing how he was tortured at his prior job while working as a government contractor.

to satisfy the similarly situated pleading requirement. Plaintiff has not alleged sufficient facts to state a claim under the Equal Protection Clause.[4]

### 3. Fourth Amendment Claims

Defendants argue that Plaintiff has not alleged an actionable Fourth Amendment claim against Defendants Lewis, Davis, and Huggins.

The Fourth Amendment to the U.S. Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV. "A search within the meaning of the Fourth Amendment occurs whenever the government intrudes upon any place and in relation to any item in which a person has a reasonable expectation of privacy." *United States v. Moss*, 936 F.3d 52, 58 (1st Cir. 2019). "[W]hen it comes to the Fourth Amendment, the home is first among equals." *Florida v. Jardines*, 569 U.S. 1, 6 (2013). Although warrantless searches in a home are presumptively unreasonable, *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006), "the exigencies of the situation [may] make the needs of law enforcement so compelling that the warrantless search is objectively reasonable." *Mincey v. Arizona*, 437 U.S. 385, 393–94 (1978). "Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham*, 547 U.S. at 403; *accord United States v. Samboy*, 433 F.3d 154, 158 (1st Cir. 2005) (quoting *Fletcher v. Town of Clinton*, 196 F.3d

---

[4] Because a plaintiff must allege that he or she was treated differently than someone similarly situated for any type of Equal Protection claim, Plaintiff has failed to allege a "class of one" claim or a claim based on his alleged suspect class. *See Estate of Bennett*, 548 F.3d at 166; *Vill. of Willowbrook*, 538 U.S. at 564.

41, 49 (1st Cir. 1999) ("To show exigent circumstances, the police must reasonably believe that 'there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant.'").

The First Circuit has also recognized a community caretaker exception to the warrant requirement. In 2014, the First Circuit wrote, "we have recognized (in the motor vehicle context) a community caretaking exception to the warrant requirement. In delineating this exception, we held 'the imperatives of the fourth amendment are satisfied in connection with the performance of … community caretaker tasks so long as the procedure employed (and its implementation) is reasonable.'" *MacDonald v. Town of Eastham*, 745 F.3d 8, 12 (1st Cir. 2014) (quoting *United States v. Rodriguez-Morales*, 929 F.2d 780, 785 (1st Cir. 1991)); *see also Boudreau v. Lussier*, 901 F.3d 65, 71 (1st Cir. 2018) (citation and internal quotation marks omitted) ("The 'community caretaking function' is one of the various exceptions to the Fourth Amendment's requirement that law enforcement officers have probable cause and obtain a warrant before effecting a search or seizing property.").

In March 2020, the First Circuit extended application of the community caretaker exception from a motor vehicle to the home. *Caniglia v. Strom*, 953 F.3d 112 (1st Cir. 2020). On May 17, 2021, the Supreme Court reversed, reasoning in part that "this recognition that police officers perform many civic tasks in modern society was just that—a recognition that these tasks exist, and not an open-ended license to perform them anywhere." *Caniglia v. Strom*, 593 U.S. 194, 199 (2021).

13

    *a.*  *Fourth Amendment Claims Against Defendants Lewis, Davis, and Huggins*

Plaintiff alleges that Defendants entered his home without a warrant. Plaintiff also has not alleged that exigent circumstances existed to justify a warrantless entry on August 21, 2017. Because Plaintiff alleges that the officers, after entering his apartment, stated they were concerned about Plaintiff's mental health, the alleged facts alleged could be viewed to raise the possibility of exigent circumstances. The alleged facts, however, do not require a finding of exigent circumstances.[5] Because the facts alleged in Plaintiff's complaint, when viewed most favorably to Plaintiff, could support a finding that the officers entered Plaintiff's apartment without a warrant in the absence of exigent circumstances, Plaintiff has sufficiently alleged a Fourth Amendment violation against Defendants Lewis, Davis, and Huggins. *See Groh v. Ramirez*, 540 U.S. 551, 564 (2004).

    *b.*  *Fourth Amendment Claims Against Defendants Gastia and Dow*[6]

As pled by Plaintiff, on September 8, 2017, either Officer Gastia or Dow reached into Plaintiff's bedroom window, opened the window further, and removed an item obstructing the view into the window. When viewed most favorably to Plaintiff, the alleged facts do not establish exigent circumstances that would permit a warrantless entry

---

[5] In their motion to dismiss, Defendants assert that the officers went to Plaintiff's apartment with Plaintiff's mother and suggest that viewing Plaintiff naked on his floor created exigent circumstances allowing the officers to enter the apartment without a warrant. On a motion to dismiss, the Court considers the well-pled facts within a complaint. The Court does not consider unsupported factual assertions in memoranda filed in connection with the motion.

[6] Although Defendants do not argue Plaintiff failed to state a claim under the Fourth Amendment as to Defendants Gastia and Dow, because it is relevant to the qualified immunity analysis, *see* discussion *infra*, I address it here.

by the officer. The allegations, therefore, are sufficient to state a claim under the Fourth Amendment.[7] *See United States v. Jones*, 565 U.S. 400, 410 (2012); *United States v. Maple*, 348 F.3d 260, 262 (D.C. Cir. 2003) ("[A]ny deliberate governmental intrusion into a closed space—opening a door or a closed compartment—is a search regardless of the reasons for the intrusion."); *Hopkins v. Claroni*, No. 1:13-CV-229-DBH, 2015 WL 2371654, at *5 (D. Me. May 18, 2015) (police officer reaching through car window may be search under Fourth Amendment but dismissing claim on qualified immunity grounds); *see also United States v. Brown*, No. 623-017, 2025 WL 25957, at *8–9 (S.D. Ga. Jan. 3, 2025) (encouraging police dog to stick head into vehicle violated Fourth Amendment).

### C.    Qualified Immunity

Qualified immunity protects police officers and other governmental officials from personal liability for money damages in civil rights actions, provided the officer's actions did not violate rights clearly established by the governing law. *Ciolino v. Gikas*, 861 F.3d 296, 302 (1st Cir. 2017). "In practice, the doctrine affords government officials a 'margin of error' to make reasonable mistakes in the course of their work." *Morse v. Cloutier*, 869 F.3d 16, 22 (1st Cir. 2017). When the qualified immunity defense is raised, a court initially asks whether the plaintiff alleged sufficient facts to state a claim for violation of a constitutional right. *Id.* at 303. As discussed above, Plaintiff has alleged sufficient facts

---

[7] To the extent Plaintiff argues the officer or officers "banging" on his door is a violation of the Fourth Amendment, Supreme Court precedent teaches that it is not. *See Kentucky v. King*, 563 U.S. 452, 472 (2011) (holding police officer banging on door as loud as they could and announcing it was the police "was entirely consistent with the Fourth Amendment.")

15

to state a claim under the Fourth Amendment for the August 21, 2017, and September 8, 2017, incidents.

The next step in a qualified immunity analysis is to consider whether the right was clearly established when the alleged violation occurred. *Id.* "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (*Reichle v. Howards*, 566 U.S. 658, 664 (2012)). To determine if something is "clearly established", courts must first "ask whether the contours of the right would have been 'sufficiently well-defined at the critical time' and, if so, 'whether it would have been clear to an objectively reasonable official, situated similarly to [the defendants], that the actions taken or omitted contravened the clearly established right.'" *Haley v. City of Boston*, 657 F.3d 39, 48 (1st Cir. 2011) (quoting *Limone v. Condon*, 372 F.3d 39, 48 (1st Cir. 2004)); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) (describing the First Circuit's qualified immunity approach as three-part test).

Defendants contend that at the time of the incidents, while the First Circuit recognized a community caretaking exception to the warrant requirement, its application to the home was uncertain and thus not clearly established. Defendants argue, therefore, that given the lack of clarity regarding application of the exception to the home until the Supreme Court's decision in *Caniglia*, "there was no reason to believe the entry was not justified and Constitutional." (Motion at 10.)

Even if the scope of the exception was not clearly established and the officers could have reasonably believed that the community caretaking exception applied to the home,

16

dismissal is not appropriate based on qualified immunity. The circumstances of the officers' entry are disputed and, therefore, a more developed record is required to determine the relevancy of the community caretaker exception to the qualified immunity analysis. *See Jakuttis v. Town of Dracut*, 656 F. Supp. 3d 302, 318 (D. Mass. 2023) ("Factual disputes or undeveloped facts relevant to qualified immunity may preclude an early decision in such cases."); *Chamberlain Estate of Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020); *see also Abubardar v. Gross*, 542 F. Supp. 3d 69, 75, 77 (D. Mass. 2021) ("The rejection of a qualified immunity defense at the motion to dismiss stage does not preclude a party from reasserting the defense after further factual development.").

**D.      Statute of Limitations**

Defendants argue the claims against Defendants Gastia and Dow should be dismissed because the statute of limitations expired before Plaintiff added them as defendants.

For an amended complaint as to new defendants to relate back to the date of the filing of the original pleading, in accordance with Federal Rule of Civil Procedure 15(c), the following conditions must be satisfied:

> First, the claim asserted against the newly-designated defendant . . . must arise 'out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading. Second, 'within the period provided . . . for serving the summons and complaint, the party to be brought in by amendment' must have 'received such notice of the action that it will not be prejudiced in defending on the merits.' Third, it must appear that within the same time frame the newly-designated defendant either "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

*Morel v. DaimlerChrysler AG*, 565 F.3d 20, 26 (1st Cir. 2009) (quoting Fed. R. Civ. P. 15(c)) (citations omitted); Fed. R. Civ. P. 15(c). Courts may find constructive notice under the shared attorney method or the identity of interest method. *Singletary v. Pa. Dept. of Corrections*, 266 F.3d 186, 196 (3d Cir. 2001); *Miller v. Hassinger*, 173 F. App'x 948, 955 (3d Cir. 2006); *see also Chao v. Ballista*, 630 F. Supp. 2d 170, 181–82 (D. Mass. 2009).

Defendants do not dispute that the claim against Defendants Gastia and Dow is the same conduct set forth in the original pleading. Plaintiff evidently did not originally include Defendants Gastia and Dow as defendants due to a mistaken belief that the officers present at the September incident were the same officers who were present at the August incident. *See Phoenix v. Day One*, No. 20-cv-152-WES-PAS, 2020 WL 7310498, at *4 (D.R.I. Dec. 11, 2020) (discussing requirement that Plaintiff be mistaken concerning a defendant's identity). Whether Gastia and Dow had notice and knew or should have known about this action, however, requires a more developed record. The Court cannot at this stage of the proceedings determine whether the statute of limitations bars Plaintiff's claim. *See Miller*, 173 F. App'x at 956 (finding district court erred in not providing plaintiff "sufficient opportunity to conduct discovery on the issue of notice.").

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendants' motion to dismiss as to all claims against the City of Bangor and the Bangor Police Department, and as to individual defendants on Counts IV, V, and VI (equal protection claims). I recommend the Court deny the motion as to Counts I, II, and III as to the individual defendants. I further recommend the Court dismiss as unnecessary and as mooted by this

recommended decision, Plaintiff's motion to dismiss, moot, or strike the motion to dismiss.[8]

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison  
U.S. Magistrate Judge

Dated this 10th day of March, 2025.

---

[8] Defendants also assert insufficiency of process and lack of service of the complaint upon the individual defendants. The individual defendants have participated in the motion practice, which suggests a lack of prejudice to the defendants if the Court were to allow Plaintiff more time to serve the defendants. Accordingly, if the Court adopts the recommended decision and the case proceeds against one or more individual defendants who have not been served, I recommend the Court extend the time for service and not dismiss based on a lack of service or the insufficiency of process.